UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEOFFREY FITZGERALD WILSON,<br><br>Plaintiff,<br><br>v.<br><br>TANNAZ H. AZINKHAN, Ph.D, et al.,<br><br>Defendants. | Case No. CV 16-8092 JVS(JC)<br><br>ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND |

**I.   BACKGROUND AND SUMMARY**

On October 31, 2016, Geoffrey Fitzgerald Wilson ("plaintiff"), who is at liberty, is proceeding *pro se*, and has been granted leave to proceed *in forma pauperis*, filed a Civil Rights Complaint ("Original Complaint") pursuant to 42 U.S.C. § 1983 ("Section 1983") against, among others (1) Tannaz H. Azinkhan, Ph.D.; and (2) Sharper Future (collectively "defendants"). Plaintiff sought monetary relief from defendant Azinkhan in her individual capacity only and from defendant Sharper Future in its official capacity only.

On July 25, 2017, the Court dismissed the Original Complaint with leave to amend. (Docket No. 7).

On September 7, 2017, plaintiff filed the operative First Amended Complaint ("First Amended Complaint" or "FAC").  He again sues both defendants and seeks monetary relief from defendant Azinkhan in her individual capacity only and from defendant Sharper Future in its official capacity only.  (FAC at 1-2, 6).

Since, much like its predecessor, the First Amended Complaint is deficient in multiple respects, including those detailed below, it is dismissed with leave to amend.

**II.    THE SCREENING REQUIREMENT**

As plaintiff is proceeding *in forma pauperis*, the Court must screen the First Amended Complaint, and is required to dismiss the case at any time it concludes the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2)(B).

When screening a complaint to determine whether it states any claim that is viable (*i.e.*, capable of succeeding), the Court applies the same standard as it would when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  See Rosati v. Igbinoso, 791 F.3d 1037, 1039 (9th Cir. 2015) (citation omitted).  Rule 12(b)(6), in turn, is read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure ("Rule 8").  Zixiang Li v. Kerry, 710 F.3d 995, 998-99 (9th Cir. 2013).  Under Rule 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While Rule 8 does not require detailed factual allegations, at a minimum a complaint must allege enough specific facts to provide *both* "fair notice" of the particular claim being asserted *and* "the grounds upon which [that claim] rests."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 & n.3 (2007) (citation and quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation") (citing id. at 555).

1       Thus, to avoid dismissal, a civil rights complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir. 2014) (citations and quotation marks omitted). A claim is "plausible" when the facts alleged in the complaint would support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. Iqbal, 556 U.S. at 678 (citation omitted). Allegations that are "merely consistent with" a defendant's liability, or reflect only "the mere possibility of misconduct" do not "show[] that the pleader is entitled to relief" (as required by Fed. R. Civ. P. 8(a)(2)), and thus are insufficient to state a claim that is "plausible on its face." Iqbal, 556 U.S. at 678-79 (citations and quotation marks omitted). At this preliminary stage, "well-pleaded factual allegations" in a complaint are assumed true, while "[t]hreadbare recitals of the elements of a cause of action" and "legal conclusion[s] couched as a factual allegation" are not. Id. (citation and quotation marks omitted); Jackson v. Barnes, 749 F.3d 755, 763 (9th Cir. 2014) ("mere legal conclusions 'are not entitled to the assumption of truth'") (quoting id.), cert. denied, 135 S. Ct. 980 (2015).

      *Pro se* complaints in civil rights cases are interpreted liberally to give plaintiffs "the benefit of any doubt." Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation and internal quotation marks omitted). If a *pro se* complaint is dismissed because it does not state a claim, the court must freely grant "leave to amend" (that is, give the plaintiff a chance to file a new, corrected complaint) if it is "at all possible" that the plaintiff could fix the identified pleading errors by alleging different or new facts. Cafasso v. General Dynamics C4 Systems, Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) (citation omitted); Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc) (citations and internal quotation marks omitted).

///

///

3

## III. THE FIRST AMENDED COMPLAINT

Liberally construed, the First Amended Complaint alleges the following:

Defendant Sharper Future provides mental health services under a contract with the State of California. (FAC ¶¶ 7-8). Defendant Azinkhan is a psychologist and employee of Sharper Future. (FAC ¶¶ 5-6). As a condition of his parole, plaintiff was required to attend therapy sessions conducted by defendant Azinkhan. (FAC ¶ 10). Plaintiff's parole conditions also required plaintiff to obey all directions of "Sharper Future Staff" and to waive his privilege to doctor-client confidentiality with respect to defendant Azinkhan. (FAC ¶¶ 19-20). Plaintiff was coerced into agreeing to the foregoing conditions "under threat of imprisonment." (FAC ¶¶ 19-20).

On October 25, 2014, during a group therapy session, defendant Azinkhan read plaintiff's arrest record to the attendees without plaintiff's consent. (FAC ¶ 9). Defendant Azinkhan had privileged access to plaintiff's arrest record and had a duty to refrain from releasing the private, confidential, or privileged information, and to attempt to protect persons from harm, misuse, or misrepresentation as a result of her statements. (FAC ¶ 11). Defendant Azinkhan breached her duty by disclosing information from plaintiff's arrest record to members of the therapy group. (FAC ¶ 12).

On November 1, 2014, starting at approximately 12:05 p.m., defendant Azinkhan conducted another group therapy session with plaintiff in attendance. (FAC ¶ 13). Defendant Azinkhan told plaintiff that he would not be allowed to answer questions by saying "I did not commit the crime." (FAC ¶ 13). When plaintiff wrote down the defendant's prohibition on the back of a questionnaire, defendant Azinkhan asked plaintiff, "What are you writing?" (FAC ¶ 14). Plaintiff replied, "what you said." (FAC ¶ 14). Defendant Azinkhan then ordered plaintiff to "get out." (FAC ¶ 14). Plaintiff said "thank you," and left approximately 11 minutes after the group therapy session had started. (FAC ¶¶ 15, 17).

Plaintiff was arrested and placed in jail for not returning to the group therapy session the same day. (FAC ¶ 16). At a subsequent parole revocation hearing, plaintiff was charged with disturbing the peace and failing to participate in group therapy. (FAC ¶ 16). Defendant Azinkhan testified at plaintiff's parole revocation hearing that plaintiff had disrupted the November 1 group therapy session for 40 minutes. (FAC ¶¶ 16-17). However, global positioning satellite tracking information from plaintiff's ankle bracelet showed that plaintiff had actually left the therapy session after only 11 minutes, leading the State to drop the disturbing the peace charge. (FAC ¶ 17).

Defendant Azinkhan also testified "that her assistant, also a clinician, was present when she read [] plaintiff's arrest record to the other participants at the [October 25] group [therapy] session." (FAC ¶ 21). Observing the gravity of this violation of plaintiff's rights, the court presiding over the hearing remarked to the prosecutor:

> Just an aside note [], I don't know if the arrest record was even available, I don't know how she would get it if it is available and she did read it. She certainly needs to be informed . . . that's not only unethical, there are legal issues of concern. Making no judgments, I just want to make sure that if that occurred it doesn't [] ever occur again.

(FAC ¶ 21) (citation omitted).

At plaintiff's hearing, the prosecutor "supported an objection with [the following] offer of proof: '[P]arole turns over to the clinicians the determination of what constitutes active participation and then the clinician[s] report to parole if they think[] that the person is not actively participating based on what the clinician requires.'" (FAC ¶ 18) (citation omitted).

Plaintiff claims the foregoing violated plaintiff's Eighth Amendment right to be free from cruel and unusual punishment, and deprived plaintiff of his First Amendment right to free speech. (FAC ¶¶ 22, 27).

5

## IV. DISCUSSION

### A. Pertinent Law – Section 1983 Claims: "Color of State Law" Requirement

To state a claim under Section 1983, a plaintiff must allege that a defendant, while acting under color of state law, caused a deprivation of the plaintiff's federal rights. 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted).

It is generally presumed that private individuals and entities do *not* act "under color of state law" within the meaning of Section 1983. See Florer v. Congregation Pidyon Shevuyim, N.A., 639 F.3d 916, 922 (9th Cir. 2011) (citation omitted), cert. denied, 565 U.S. 1116 (2012). Such private parties may be held liable under Section 1983 for constitutional deprivations, but only to the extent their actions "are fairly attributable to the state. . . ." Id. (citing Lugar v. Edmondson Oil Company, Inc., 457 U.S. 922, 937 (1982)).

The U.S. Supreme Court has established at least four tests for determining when the conduct of a private party may properly be considered "state action" for purposes of Section 1983, namely, "(1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test." Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1140 (9th Cir. 2012) (citation and quotation marks omitted). A Section 1983 plaintiff has the burden to plead and prove state action by a private defendant. See id. (citing Lugar, 457 U.S. at 937).

When a private business entity engages in "state action," it still cannot be held liable under Section 1983 unless the plaintiff's constitutional violation was caused by the entity's "policy, practice, or custom" or by an "order by a policy-making officer[.]" See Tsao, 698 F.3d at 1138-39 (applying "reasoning underlying Monell [v. Department of Social Services, 436 U.S. 658, 691 (1978)] . . . [to] private entities acting under color of state law") (citations omitted).

///

**B. Analysis**

**1. Defendant Azinkhan**

Here, plaintiff again fails plausibly to allege that the conduct of defendant Azinkhan – a psychologist employed by what appears to be a private mental health care provider – amounted to state action under any of the foregoing tests.

First, under the "public function test," private individuals or entities are deemed to be state actors for purposes of Section 1983 only when they perform a public function that has been "traditionally the *exclusive* prerogative of the State." Rendell-Baker v. Kohn, 457 U.S. 830, 842 (1982) (citations and quotation marks omitted; emphasis in original). Here, the First Amended Complaint does not plausibly allege that defendant Azinkhan acted pursuant to an *exclusive* governmental function by providing group therapy and reporting to a government agency a parolee's level of active participation. Cf, e.g., Jensen v. Lane County, 222 F.3d 570, 574 (9th Cir. 2000) (involuntary "mental health commitments" facilitated by private physician "do not constitute a function 'exclusively reserved to the State'"); Merrill v. Mental Health Systems, 2016 WL 4761789, *4 (S.D. Cal. Sept. 13, 2016) (dismissing complaint against private entity that provided treatment services for parolees where plaintiff failed to allege that provision of treatment to parolees traditionally an exclusive function of state so as to satisfy state action public function test); Craig v. City of King City, 2012 WL 1094327, *4 (N.D. Cal. Mar. 29, 2012) (administration of police fitness for duty examination by private psychologist "not a traditional and exclusive government function"); Heggem v. Holmes, 2011 WL 7758243, *5 (W.D. Wash. Dec. 9, 2011) ("Providing chemical dependency counseling is not traditionally and exclusively a governmental function. . . ."), report and recommendation adopted, 2012 WL 1378786 (W.D. Wash. Apr. 20, 2012); see also Rendell-Baker, 457 U.S. at 842 ("That a private entity performs a function which serves the public does not make its acts state action.") (footnote omitted).

Second, under the joint action test, a private individual may be liable as a state actor under Section 1983 if he or she was part of a conspiracy or was a "willful participant in [other] joint action" with a state actor that caused the constitutional violation. Franklin v. Fox, 312 F.3d 423, 445 (9th Cir. 2002) (joint action test "focuses on whether the state has 'so far insinuated itself into a position of interdependence with [the private actor] that it must be recognized as a joint participant in the challenged activity'") (citations and internal quotation marks omitted); DeGrassi v. City of Glendora, 207 F.3d 636, 647 (9th Cir. 2000) (citation omitted). There must be "a substantial degree of cooperation" between private individuals and the government to establish Section 1983 liability under the joint action test. Franklin, 312 F.3d at 445.

Here, allegations that defendant Azinkhan independently breached a duty to protect plaintiff's private information during the October 25 group therapy session, that Azinkhan provided inaccurate testimony at the parole revocation hearing regarding the duration of plaintiff's attendance at the November 1 therapy session, and/or generally agreed to report to parole officials when she determined – based on her own, independent professional judgment – that a person was "not actively participating" in therapy, without more, do not plausibly suggest that defendant Azinkhan cooperated to any substantial degree with a state actor, much less engaged in a conspiracy with a state actor to violate plaintiff's constitutional rights. Cf., e.g., Briscoe v. LaHue, 460 U.S. 325, 329-30 (1983) (private party's testimony in court not act performed under color of state law); Dietrich v. John Ascuaga's Nugget, 548 F.3d 892, 899-900 (9th Cir. 2008) (granting summary judgment in favor of defendant private employees of event organizer who requested that plaintiff and other petition gatherers be removed from public sidewalk where plaintiff presented no evidence that defendants "did anything more than summon police"); Lovelace v. Oregon, 2009 WL 2450298, *6 (D. Or. Aug. 10, 2009) ("providing sex offender treatment and reporting to parole officials on the progress

of [parolee's] treatment" insufficient to treat therapist as "state actor") (citing, in part, Kirtley v. Rainey, 326 F.3d 1088, 1093 (9th Cir. 2003)).  In addition, conclusory allegations that plaintiff had separately been coerced into agreeing to parole conditions that required plaintiff to waive doctor-client privilege (which allowed for defendant Azinkhan to testify against plaintiff), and generally required plaintiff to obey Sharper Future staff, do not plausibly suggest that any state actor insinuated him or her self into a position of interdependence with the private defendants who are not alleged to have participated at all in determination of plaintiff's conditions of parole.

Third, the First Amended Complaint does not plausibly allege that defendant Azinkhan's private conduct was effectively converted into state action through governmental compulsion/coercion or due to any *close* nexus between defendant Azinkhan and a governmental entity.  See generally Brentwood Academy v. Tennessee Secondary School Athletic Association, 531 U.S. 288, 295 (2001) ("[S]tate action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'") (citation omitted); Rendell-Baker, 457 U.S. at 840 ("[A] State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.") (citation and quotation marks omitted); Kirtley, 326 F.3d at 1094 ("The compulsion test considers whether the coercive influence or 'significant encouragement' of the state effectively converts a private action into a government action.") (citation omitted); Merrill, 2016 WL 4761789 at *4-5 (dismissing Section 1983 claim where plaintiff parolee, who was required to undergo treatment at private defendant treatment facility as condition of parole, failed adequately to allege state action under public function test because State neither directly compelled nor was directly involved in defendant's conduct about

which plaintiff complained; fact that the State authorized defendant to coordinate and provide treatment to parolees does not convert defendant's conduct into state action under governmental nexus test); Heggem, 2011 WL 7758243 at *6 (noting that under Washington state law, private chemical dependency counselor "functions independently from the State, exercising professional obligations primarily to his or her client" and "is under [no] governmental compulsion to submit an allegedly fraudulent report if asked to do so by the State"). Without more, allegations that defendant Azinkhan was employed by a private mental health services organization that contracted with the state do not show that defendant Azinkhan was acting under color of law under the circumstances. See, e.g., Rendell-Baker, 457 U.S. at 840-41 (acts of private entity that primarily does business with the government "do not become acts of the government by reason of [the entity's] significant or even total engagement in performing public contracts").

Finally, plaintiff's bare allegations that defendant Azinkhan "was a willful participant in joint action with the State or its agents[,]" and/or "cooperated to a substantial degree with a state actor as described by the state prosecutor[]" (FAC ¶ 4), are insufficient to state a cognizable Section 1983 claim against the private defendant. See, e.g., DeGrassi, 207 F.3d at 647 ("[A] bare allegation of [] joint action will not overcome a motion to dismiss; the plaintiff must allege "facts tending to show . . . [acts] under color of state law or authority.") (citation, internal quotation marks, and brackets omitted); see also Iqbal, 556 U.S. at 680-84 (conclusory allegations in complaint which amount to nothing more than a "formulaic recitation of the elements" are insufficient under pleading standard in Fed. R. Civ. P. 8) (citations omitted). Likewise, conclusory allegations that both of the defendants "were at all times [] acting under the color of state law and were acting for and on behalf of the California Department of Corrections and Rehabilitation" (FAC ¶ 7) are insufficient to state a viable Section 1983 claim. Id.

  **2.  Defendant Sharper Future**

The First Amended Complaint also fails plausibly to allege that Sharper Future is liable under Section 1983 for any deprivation of plaintiff's constitutional rights under color of state law. Plaintiff does not allege facts which plausibly suggest that Sharper Future, which allegedly contracted with California to provide the mental health services plaintiff was required to attend, maintained a policy, decision, or custom which in any way caused a deprivation of plaintiff's constitutional rights, much less one that may properly be attributed to the government under Section 1983. Allegations that defendant Azinkhan testified at the parole hearing, that her assistant was present at the October 25 therapy session, and that the court remarked about "the gravity of [her] violation of plaintiff's rights" do not plausibly suggest otherwise. See generally Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985) (proof of single constitutional violation not sufficient to impose Section 1983 liability on government entity); Avalos v. Baca, 517 F. Supp. 2d 1156, 1162 (C.D. Cal. 2007) (citation omitted), aff'd 596 F.3d 583 (9th Cir. 2010). Conclusory allegations that "plaintiff's constitutional violations were caused by [Sharper Future's] policy, practice, or custom or by an order by a policymaking officer" (FAC ¶ 8) or that "[d]efendant Sharper Future maintained policies, practices, or customs that promoted civil rights violations to the point that other staff members observe[d] these violations without reporting them[]" (FAC ¶ 25) are also insufficient to state a viable Section 1983 claim against defendant Sharper Future. Cf., e.g., AE ex rel. Hernandez v. County of Tulare, 666 F.3d 631, 636-37 (9th Cir. 2012) (To survive motion to dismiss complaint must contain "factual allegations that . . . plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation" – a "bare allegation" that officer's conduct conformed to unspecified government policy, custom or practice is insufficient.) (citations and internal quotation marks omitted).

**V.     ORDERS**

In light of the foregoing, IT IS HEREBY ORDERED:

1. The First Amended Complaint is dismissed with leave to amend. If plaintiff intends to pursue this matter, he shall file a Second Amended Complaint within fourteen (14) days of the date of this Order which cures the pleading defects set forth herein.[1]

2. In the event plaintiff elects not to proceed with this action, he shall sign and return the attached Notice of Dismissal by the foregoing deadline which will result in the voluntary dismissal of this action without prejudice.

**3. Plaintiff is cautioned that, absent further order of the Court, plaintiff's failure timely to file a Second Amended Complaint or Notice of Dismissal, may be deemed plaintiff's admission that amendment is futile, and may result in the dismissal of this action with or without prejudice on the grounds set forth above, on the ground that amendment is futile, for failure diligently to prosecute, and/or for failure to comply with the Court's Orders.**

IT IS SO ORDERED.

DATED: November 20, 2017  _____
HONORABLE JAMES V. SELNA
UNITED STATES DISTRICT JUDGE

Attachment

---

[1] Any Second Amended Complaint must: (a) be labeled "Second Amended Complaint"; (b) be complete in and of itself and not refer in any manner to the Original or First Amended Complaint – *i.e.*, it must include all claims on which plaintiff seeks to proceed (Local Rule 15-2); (c) contain a "short and plain" statement of the claim(s) for relief (Fed. R. Civ. P. 8(a)); (d) make each allegation "simple, concise and direct" (Fed. R. Civ. P. 8(d)(1)); (e) state each claim founded on a separate transaction or occurrence in a separate count as needed for clarity (Fed. R. Civ. P. 10(b)); (f) set forth clearly the sequence of events giving rise to the claim(s) for relief; (g) allege specifically what each defendant did and how that defendant's conduct specifically violated plaintiff's civil rights; and (h) not change the nature of this suit by adding new, unrelated claims or defendants, cf. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (civil rights plaintiff may not file "buckshot" complaints – *i.e.*, a pleading that alleges unrelated violations against different defendants).